IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARFIELD SEWELL,**

    Petitioner,

v.     Civil Action No. 1:13cv120
       (Judge Keeley)

**ANNE MARY CARTER, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On April 15, 2013, the *pro se* petitioner, an inmate at FCI Morgantown, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241,[1] along with a Motion for Leave to Proceed in *Forma Pauperis* ("IFP") and a copy of his Prisoner Trust Fund Account Statement ("PTAR"). Pursuant to a Notice of Deficient Pleading, on May 3, 2013, the petitioner filed the Ledger Sheets to his PTAR. By Order entered May 7, 2013, petitioner was granted IFP status but directed to pay the $5.00 filing fee. Petitioner paid the required fee on July 1, 2013.

On July 9, 2013, the Court made a preliminary review of the petition and found that summary dismissal of the same was not warranted. Accordingly, the Warden was directed to show cause why the writ should not be granted. On July 31, 2013, the respondent filed a Motion to Dismiss, Motion for Summary Judgment and Response to Show Cause Order. On August 5, 2013, a Roseboro Notice was sent to petitioner, advising him of his right to respond. Petitioner filed his response on September 3, 2013.

### II. Facts

---

[1] Petitioner noted at the top of his pleading that this "filing is second try second mailing of motion to expediate [sic] under Rule 50." On page 14 and 31 of his petition, petitioner again asserts that this is his second filing in district court in West Virginia. There is no record of anything previously filed by petitioner in this district.

1

On September 19, 2011, in the United States District Court for the Eastern District of Kentucky, petitioner pled guilty to Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. §841(a)(1).

Subsequently, on December 19, 2011, petitioner was sentenced to 51 months imprisonment. At the time of sentencing, the Court recommended that petitioner participate in the BOP's 500-hour Residential Drug Abuse Program ("RDAP").

Petitioner did not file an appeal. He is serving his sentence at the Morgantown Federal Correctional Institution ("FCI-Morgantown") in West Virginia. His projected date of release with good conduct time is May 29, 2015.[2]

### III. Issues Presented

**A. The Petition**

In a court-approved form petition with 21 attached typewritten pages,[3] petitioner challenges the Bureau of Prison's ("BOP") determination that he is ineligible for sentence reduction via early release, pursuant to the provisions of 18 U.S.C. §3621(e), because of his prior robbery convictions. He contends that

    1) the Designation and Sentence Computation Center ("DSCC") staff's May 16, 2012 decision denying his sentence reduction under 18 U.S.C. §3621(e) was an abuse of discretion;

    2) the BOP relied on factors that Congress did not intend it to consider;

    3) the PreSentence Investigation Report ("PSR") containing the allegation regarding his 40-year-old convictions for robbery, used by the DSCC was never certified, in accordance with the Federal Rules of Criminal and Civil Procedure and the Fed. R. Evid. 902;

    4) The DSCC did not establish the chain of custody for the PSR, so the PSR was "void and defective on it's [sic] face;" and

---

[2] Dkt.# 16-11 at 3.

[3] LR PL 3.4.4 specifies that no more than five (5) typewritten pages or ten (10) legibly printed pages may be attached to any Court-approved form unless accompanied by a Motion for Leave to file excess pages. Petitioner's court-approved form petition was not accompanied by a Motion for Leave to file excess pages.

2

5) the sentencing court should not have denied his petition, or, alternatively, it should have transferred his petition[4] to this court.

Petitioner asserts that he has exhausted his administrative remedies with regard to his claims.

As relief, he seeks an Order directing the BOP to grant him the right to enter into any and all available early release programs, including both 1-year home confinement and 6-month halfway house.

**B. Respondent's Motion to Dismiss or For Summary Judgment and Response to Show Cause Order**

The respondent argues that the complaint should be dismissed or summary judgment granted in its favor, because (1) the Bureau of Prison's ("BOP") determination that petitioner's criminal history precludes him from early release consideration was a valid exercise of its discretion and (2) petitioner has failed to exhaust his administrative remedies.

**C. Petitioner's Reply**

In a rambling, 19-page, hand-written response,[5] quoting verbatim large sections of the Federal Rules of Civil Procedure, petitioner reiterates his claims and attempts to refute the respondent's arguments on the same, insisting he fully exhausted his administrative remedies. Alternatively, he argues exhaustion should be excused where it is futile. He contends that the respondent has not complied with the Federal Rules of Civil Procedure, and therefore, he is entitled to a default judgment and early release.

---

[4] On August 6, 2012, petitioner wrote two letters, a six-page one to Robert A. Martinez ("Martinez"), Assistant General Counsel for the DSCC, and a one-page one to District Judge Joseph M. Hood, Sr., in the Eastern District of Kentucky. In his letter to Martinez, titled "Re: Request for Reconsideration of Sentence Reduction Pursuant to 18 USC §3621(e)(2)(B) – United States of America v. Garfield Sewell, Case No. 5:11cr118-JMH, he raised the same issues he is raising in this §2241 petition. Petitioner's letter to Judge Hood attached a copy of the Martinez letter, and requested that Judge Hood "notify" Martinez that petitioner's 1972 robbery convictions "could not be used retroactively to deny [petitioner's] . . . eligibility for sentence reduction." Although docketed as a letter, not as a letter motion or as an improvidently-filed §2241 petition, the Court attached them to its August 9, 2012 Order, denying petitioner's request "inasmuch as it pertains to the execution of his sentence as opposed to the imposition of the same," and noting that such contentions must be raised in the judicial district in which petitioner was incarcerated. The Court further noted that when it "recommended that the defendant be placed in the [RDAP] . . ., it was fully aware that the defendant might not receive early release . . . Nevertheless, given his history of drug abuse, the Court believed the defendant would benefit if he completed the program." (E.D. Ky. Dkt.# 23)(5:11cr118).

[5] LR PL 11.3 specifies that memoranda in reply to a response filed by the opposing party shall not exceed 15 pages.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in

Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return

a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## V. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[6] and is required even when the relief sought is not available. Booth *supra* at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore,

---

[6] Id.

"the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

According to the Prison Litigation Reform Act ("PLRA"), a prisoner filing an action under any federal law must first exhaust all available administrative remedies. Title 42 U.S.C. §1997(e)(a); Marshall v. Mouse, 2011 WL 3627102 (N.D.W.Va. 2011). The Supreme Court, addressing the exhaustion issue under Section 1997(e)(a), has determined that exhaustion under the Act is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and further, that exhaustion is required, even when the relief sought is not available. Porter v. Nussle, 534 U.S. 516, 524 (2002) citing Booth v. Turner, 532 U.S. at 740, 741 (2001). See also, Anderson v. XYZ Correctional Health Servs.,Inc., 407 F.3d 674, 677 (4th Cir. 2005). Full and proper exhaustion under the PLRA requires a plaintiff to strictly comply with "all the time and procedural requirements of the prison grievance system." Woodford v. Ngo, 548 U.S. 81, 93-94 (2006)(internal citations omitted).

The Bureau of Prisons has established a three-tier Administrative Remedy Procedure, set forth in Title 28 of the Code of Federal Regulations, for the formal review of complaints filed by inmates relating to the conditions of their confinement. Title 28 C.F.R. § 542.10, *et seq*. Under this system, an inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. Title 28 C.F.R.§542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9), to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). If the inmate's request is denied, or if the inmate is dissatisfied with the Warden's response, or if there

is no response from the Warden within twenty (20) days, the inmate may file an appeal with the appropriate Regional Office, using the appropriate form (a BP-10), within twenty (20) calendar days of the Warden's response or the date the response would have been due. Title 28 C.F.R. §§542. 18; 542.15(a). If the Regional Office denies relief, the inmate completes the administrative remedy process by appealing the decision to the Office of General Counsel, or the "Central Office," in Washington, D.C., using the appropriate form (a BP-11), within thirty (30) calendar days of the date the Regional Director signed the response. Id. The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. Id.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed. Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, the facts are in dispute. The plaintiff's complaint avers that he fully exhausted his administrative remedies, but got no response to any of them; however, he did not attach copies of the same, to support this claim. His reply again avers, via a sworn affidavit, that he fully exhausted his administrative remedies, to no avail: first with at the institutional level, but after receiving no response, then with a "Regional Appeal," mailed to the geographic region in which he was confined, to which he again received no response; three months later, he filed a Central Office Administrative Remedy Appeal to the Office of General Counsel, and again received no response. He contends that "at no time at any level, was a remedy request filed outside the parameter establish in BOP policy," and asserts that "if there is no record due[to] the prison offices [sic] failer [sic] to obey their own policy and procedures to mail grievance to the correct person of Authority in each and every step is the cause[.]"[7] The respondent, on the other hand, provides an affidavit from Jay Jiminez, the BOP's Mid-Atlantic Regional Office Paralegal Specialist, averring that the BOP's computerized administrative remedy records show that petitioner never filed any grievance over the issues raised in his habeas corpus petition, let alone any other issue, the entire time he has been incarcerated.[8]

While petitioner avers that this is untrue, he has not produced copies of filed remedies to substantiate his claim. He posits possible BOP staff interference with his mail as a possible reason the BOP has no record of his filing any administrative remedies. However, even if true, this would not explain why petitioner cannot produce at least a copy of a BP-8 and BP-9 on the issue, because the same are received directly from an inmate's own Correctional Counselor without having to be mailed. After unsuccessful informal resolution via a BP-8, an inmate fills out the BP-9 and returns it to the Correctional Counselor, who then delivers it to the Administrative Remedy Clerk for receipt acknowledgment, along with the completed Informal Resolution Form. If petitioner never received a

---

[7] Dkt.# 19 at 16.

[8] Dkt.# 16-10 at 1 - 2.

9

timely response, he would then have had to request a BP-10 and BP-11 from his Correctional Counselor to appeal the decision. Only those forms must be mailed directly by the prisoner, using his own postage. However, petitioner offers nothing to explain how or why his Correctional Counselor did not assist him in the filing of his administrative remedies.

Nevertheless, recognizing that the PLRA mandates the exhaustion of administrative remedies and similar principles have been applied in habeas corpus actions, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. §2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 1131 (1997)).[9]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been filed, the respondent has filed its and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation

---

[9] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress 8 established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. However, even if petitioner were not required to exhaust administrative remedies before bringing this action, his claim is nonetheless without merit and due to be denied.

## VI. Analysis

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). The Act is applicable to persons convicted of a "nonviolent offense" and allows the BOP to reduce a prisoner's sentence by up to one year as an incentive for the successful completion of the program. See 18 U.S.C. § 3621(e)(2)(B); see also 28 C.F.R. § 550.58. Initially, a Drug Abuse Program Coordinator ("DAPC") decides whether a prisoner qualifies to participate in the RDAP and is eligible for the sentence reduction. After that initial determination of eligibility, in accordance with BOP Program Statement 5331.02, the DAPC will request a review of the inmate's current offense and prior convictions from Designation and Sentence Computation Center's ("DSCC") legal staff.[10] Inmates may be deemed ineligible for early release if they are found to have felony convictions for any offense that has as an element the actual, attempted, or threatened use of physical force against the person or property of another, or an offense that involved the carrying of, possession, or use of a firearm or other dangerous weapon, during the commission of a crime.[11] Robbery is one of the specified crimes.[12]

---

[10] See 18 U.S.C. §3621(e), §7.b, Early Release Procedures.

[11] 28 CFR §550.55(b)(5).

[12] 28 CFR §550.55(b)(4)(iii).

Here, petitioner is statutorily ineligible for early release by virtue of his two prior convictions for armed robbery. A review of petitioner's PSR indicates that each conviction was for holding up two different gas stations on separate dates in December, 1976, while armed with a pistol. Both robberies, therefore, involved the threat of physical force via a deadly weapon. After a May 11, 2012 offense review of petitioner's criminal record by the DSCC legal department, he was found to be precluded from receiving a §3621(e) early release, pursuant to 28 C.F.R. §550.55(b)(4)(iii), because of his prior robbery convictions in violation of Ky. Rev. Stat. Ann. §515.020.[13]

Petitioner's claim that he was wrongfully denied his right to early release under §3621(e) misunderstands the provisions of §3621(e). Even if petitioner had successfully gained admission to and completed the program, petitioner would still not be *entitled* to early release, because § 3621 simply does not create an entitlement to early release. See Orr v. Hawk, supra (there is no protectible liberty interest in early release under § 3621(e)); Fonner v. Thompson, 955 F. Supp. 638 (N.D. W.Va. 1997) (same); see also O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991) (a statute that creates only a hope about a future discretionary decision by prison administrators is too speculative to create a liberty interest).

Petitioner's argument that his robbery convictions were too old to be taken into consideration has no merit. There is no time limit for consideration of prior crimes specified in the statute.

Petitioner's claim that the BOP abused its discretion by taking into consideration factors that Congress did not intend it to consider, in denying him access to RDAP has no merit. While "[w]hile eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements," the statute expressly vests the BOP with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18 U.S.C. § 3621(e)(2)(B) ("the period a prisoner convicted of a

---

[13] Kentucky Revised Statute Annotated §515.020(b) states in pertinent part that a person is guilty of Robbery in the First Degree "when in the course of committing a theft, he uses or threatens he immediate use of physical force upon another person with the intent to accomplish the theft and when he . . . is armed with a deadly weapon . . ."

nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons") (emphasis added)." Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999).

As for petitioner's claim that he was "granted admission into" RDAP by virtue of his May 8, 2012 Notice of RDAP Qualification form, that claim also lacks merit. Merely because he was initially deemed eligible for RDAP after his May 8, 2012 clinical interview does not mean he was "granted admission" into RDAP. Such forms are merely an assessment of an inmate's eligibility for the program and do not create any enforceable rights for the inmate. See Royal v. Trombone, 141 F.3d 596 (5th Cir. 1998).

Petitioner's remaining claims about the validity of his PSR, its proper verification or the truthfulness of the information it contained regarding his prior convictions, likewise have no merit. Despite his claim in his reply that he was unaware of the "state cases" contained in his PSR[14] and that he never received a copy of it,[15] the minute entry of his sentencing shows that no objections were made to the PSR, and it was therefore adopted by the Court.[16] Moreover, it is clear from a review of the August 6, 2012, Martinez letter referenced in footnote 4, *supra*, that petitioner was well aware of his state court convictions at the time of sentencing.

As for petitioner's claim that the sentencing court should have transferred his petition here, that claim likewise has no merit. Petitioner had filed no "petition" in the sentencing court regarding these claims, thus, there was no petition to transfer.

Relief should be denied.

**VII. Recommendation**

---

[14] Dkt.# 19 at 11.

[15] Dkt.# 19 at 7.

[16] Dkt.# 16-9.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, Motion for Summary Judgment be **GRANTED** (Dkt.# 15), and petitioner's § 2241 petition be **DENIED** and **DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by January 2, 2014**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Chief Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. Further, the Clerk is directed to transmit a copy electronically to all counsel of record.

DATED: December 17, 2013

/s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE